IN THE

## SUPREME COURT

OF

## PENNSYLVANIA.

### DECEMBER TERM, 1808.

GIBSON *against* The Philadelphia Insurance Company. **1808.**

THIS cause came before the court upon exceptions to a report of referees.

The plaintiff on the 31st of *January* 1806, borrowed of the defendants thirty thousand dollars on respondentia, upon specie, goods, wares, and merchandises, laden or to be laden on board the ship *Triton*, bound on a voyage from *Newcastle, Delaware*, to *Canton*, and at and from thence to *Philadelphia.* The bond obligated the plaintiff, in case the voyage should be performed, to pay the principal sum, together with 583 dollars 15 cents per calendar month; and it contained the following clause, upon which the controversy arose: " It being first de- " clared to be the mutual understanding and agreement of the " parties to this contract, that the lender shall be liable to " average, and entitled to the benefit of salvage, in the same " manner to all intents and purposes as underwriters on a policy " of insurance, according to the usages and practices of the city " of *Philadelphia.*"

An agreement by a lender on *respondentia* " to be " liable to " average " in the " same man- " ner as un- " derwri- " ters on a " policy of " insurance " according " to the usa- " ges and " practices " of the city " of Phila- " delphia," does not entitle the borrow- er to calcu- late an average loss upon the whole amount of the *money loaned and the marine interest,* but merely on the cost and charges of the goods on board, and the premium of insurance.

Upon an insurance on goods, the underwriters are not liable for freight paid by the owner of the goods during the voyage.

1808.
―――
GIBSON
v.
Philadel.
Ins. Co.

The *Triton* was chartered from *Thomas Carberry* and *George Johnston* of *New York*, by *Nicklin* and *Griffith* of *Philadelphia*, at a freight of 40,000 dollars; the freighters to pay the ship's expenses, and to deduct them, together with all other sums advanced on the ship's account, out of the freight. To these expenses and advances, the shipment of the plaintiff contributed at *Canton;* and on the homeward passage, his goods, consisting of saltpetre and teas, suffered sea damage, the former 20 $\frac{90}{100}$ per cent. and the latter 2 $\frac{46}{100}$ per cent.; and the question, upon what amount this average should be calculated, was submitted to arbitration under a rule of court.

The referees reported for the plaintiff 5824 dollars 8 cents, according to the following statement:

| | | |
|---|---|---|
| Loss on Saltpetre, admitted to be | 20 $\frac{90}{100}$ per cent. | |
| on Teas, - - - | 2 $\frac{46}{100}$ per cent. | |

·Cost of Saltpetre,

| | | |
|---|---|---|
| 2000 peculs, at $ 11 | $ 22,000 | |
| Charges, per invoice, | 2,174 | |
| Commissions, 3 per cent. | 725 | 22 |
| | 24,899 | 22 |

\* Premium, 9 per cent.
Abatement, 2 per cent.
Commissions, $\frac{1}{2}$ per cent.

| | | |
|---|---|---|
| to cover | $ 3,235 | 47 |
| 20 $\frac{90}{100}$ on - - | 28,134 69 gives $ 5,880 | 15 |

---

\* This was the premium charged in calculating the monthly payment for the loan, as follows:

| | | |
|---|---|---|
| Sum loaned, - - - | $ 30,000 | |
| 1 per cent. per month, 12 mos. | 3,600 | |
| | 33,600 | |

Premium of insurance, 9 per c.
Abatement, 2 per c.

| | | |
|---|---|---|
| Commissions, $\frac{1}{2}$, to cover | 4,366 | 10 |
| 9 per cent. on - - | $ 37,966 10 - is $ 3,416 | 94 |
| | Interest, 3,600 | |
| | 7,016 | 94 |

$ 7,016 94 cts. for 12 months is $ 584 74 cts. per month, nearly the sum in the bond.

Amount brought forward, $ 5,880 15

Cost of Teas,

| | | |
|---|---|---|
| 120 qr. chests H. Skin, | $ 2,192 | 62 |
| Paper for marking, | | 60 |
| Commissions, 3 per cent. | 65 | 79 |
| | 2,259 | 01 |
| Premium, &c. to cover, | 293 | 54 |

2 $\frac{46}{100}$ on  -  -  2,552 55  gives  $ 62 79

| | | |
|---|---|---|
| | 5,942 | 94 |
| Deduct two per cent. | 118 | 86 |
| Amount of award, | 5,824 | 08 |

To this award the plaintiff filed exceptions: 1. That the average should have been calculated on the amount of the loan and interest when the *Triton* returned, the special clause in the bond making it a valued policy, and the whole amount of the loan, and the marine interest at the time of the ship's return, being the value. He therefore claimed according to the following adjustment.

Cost of Saltpetre, charges, and commissions, $ 24,899 22
of Teas,  -  -  -  -  2,259 01

27,158 23

20 $\frac{90}{100}$ per cent. on $ 24,899 22 is $ 5,203 94
2 $\frac{46}{100}$ per cent. on $ 2,259 01 is  55 45

$ 5,259 39

Whole amount of loan and marine interest 38,747 dolls. 25 cts. Then,

If 27,158 dolls. 23 cts. lose 5,259 dolls. 39 cts.——38,747 dolls. 25 cts. lose 7,503 dolls. 77 cts. the amount claimed.

2. That even supposing the calculation of the referees to have been founded on a right principle, yet, as the plaintiff had paid at *Canton* a portion of the freight out and home, which was deducted from the money shipped, the referees should have added this to the cost and charges of the goods, and so settled the average upon a larger sum.

By the examination of the referees it appeared that the plaintiff endeavoured before them to maintain his *first* exception, upon the ground of a parol agreement before the execution of the bond, that the loan and marine interest should compose the

1808.

GIBSON
v.
Philadel.
Ins. Co.

value; but they were decidedly of opinion that nothing had occurred to vary the written contract. He also alleged before them, in support of that which now formed his *second* exception, that a usage existed in *Philadelphia*, in settling an average loss on a policy on such a voyage as this, to add to the cost of the goods, the freight paid at *Canton;* but they were clear that no such usage was proved, nor had they any evidence of it.

The exceptions were argued at *March* term 1808 before the whole court.

*Gibson* and *Ingersoll* for the plaintiff. The questions in this case are, 1. Whether the defendants are not liable as upon a valued policy. 2. Whether, even if their liability is as upon an open policy, the report is not incorrect.

It is perfectly clear, if this be a valued policy, that the referees have erred; and there are two circumstances which shew it to be valued: the nature of the contract into which the clause is introduced, and the premium which the plaintiff has paid. Without the special clause, the lender would not be liable to partial loss. 2 *Marshall* 662. In case of such a loss then, the borrower would lose a proportion of the money loaned and its marine interest; for he would be obliged, notwithstanding the loss, to pay the entire interest as well as the loan. The clause was introduced to secure the borrower in this respect; it must be understood with reference to the peculiar contract of respondentia, which in the event of a partial loss involves the borrower in a loss of principal and interest; and it must be so construed as to cure the evil it was intended to remedy. If the principal and interest do not compose the value, then in case of a partial loss, the borrower must be liable to the whole marine interest as before: that is, instead of receiving an average upon what he loses, he will only receive an average upon a part of his loss. His whole loss is principal and marine interest; his indemnity should be to the same amount. This can be done only by treating the loan and interest as a valued policy, and giving him the same proportion of the whole, that his goods have sustained damage. As for instance: take 10,000 dollars for the loan, and 5,000 for the marine interest; suppose the money loaned to be on board, and that 5,000 dollars are lost. Treating it as an open policy, he will receive but about 5,000, whereas his actual loss is 7,500, since he has that amount to

pay, without having any representative of it on board. Treating it as a valued policy, he is excused 50 per centum of the loan and interest, which is precisely his loss.

No light can be thrown upon this contract by English decisions; for by the law of *England*, there is neither average nor salvage upon bottomry and respondentia, except upon *East India* voyages, which are provided for by *Stat.* 19 *G.* 2. *c.* 17. 2 *Marshall* 662. But our argument is justified by the view of the subject, which is taken by both *Emerigon* and *Valin.* 2 *Emerig.* 543. 2 *Valin* 19. In the case of general average, contribution is made upon the loan; and there is no reason for a different rule in the case of particular average. In fact the term *average*, as applied to a bottomry contract, means a deduction of the loan, and of course of the interest.

But the mode of calculating the premium shews an intention to indemnify to the whole extent. The interest was added to the principal, and to that a premium to cover; so that we have paid a premium upon principal and interest, which could be for no reason but because an indemnity might be claimed by the borrower, to that extent. A total loss would have cleared us from the whole of the debt; a partial loss should relieve us from a correspondent part of the debt. It is in truth nothing but a fair indemnity, as the cargo has cost us the whole amount of the loan and interest.

If however an open policy is the rule, the freight should have been added. It is part of the cost of our goods; for it was taken out of the money shipped, and was a charge payable before the goods could be laden. 1 *Magens* 37. It is accordingly allowed in 1 *Magens* 256. The trade to *Canton* from this country is peculiar. The freight is paid abroad; and if we do not recover it in case of loss, we do not receive an indemnity. We should also have had a return premium for short property. The loan and interest amount to 38,747 dollars 25 cts.; and a premium was paid upon the whole of it. If the measure is the amount on board, then we have paid for more than we have, and a return is indisputably due.

*Binney* for the defendants. The rule of this court is perfectly settled, that there must be a plain mistake in law or fact, to vitiate a report of referees; so that if the court have a doubt, we are entitled to the benefit of it. But the case seems too plain for doubt. The whole question depends upon the meaning of

the special clause, by which the defendants are made liable to average, *in the same manner as underwriters on a policy of insurance,* according to the usages of *Philadelphia.* To what extent, and in what manner then, are underwriters liable? If this can be ascertained, the case is at an end.

There is no pretence for construing the clause with reference to the peculiar character of a bottomry contract; for the parties have introduced another contract as the rule, namely, the contract of insurance; and such as their liability would be upon a policy, such and none other it is upon this clause. Now there is nothing more certain than that every policy is open, unless it is expressly valued. The terms themselves prove it. A policy is of the latter kind, only where a value is set upon the property, and *inserted* in the contract in the nature of liquidated damages, to save the necessity of proving it. *Marshall* 190. If the parties have not agreed upon the value, the policy is open; and it remains for the assured to shew the value in case of loss. There is certainly no value fixed in the present contract, nor even a sum named, except 30,000 dollars, which the plaintiff denies to be the value. The defendants are not to answer as underwriters on a *valued* policy, but as underwriters on a policy of insurance generally, which of course means an *open* policy. If therefore they are to abate a part of the loan and its interest, without regard to the value of the goods on board, they are not liable in the same manner as underwriters; for as against underwriters, where there is no valuation in the policy, it is only the cost of the goods, with all charges till on board, and the premium of insurance included, that makes the value insured. 1 *Magens* 37. But take it to be a valued policy. What is the value? If it is merely the 30,000 dollars, the plaintiff gets too much, as the referees have settled the average upon a larger amount. If it goes beyond this, it includes the marine interest; and then it becomes a fluctuating value from 30,000 up to 38,747, according to the lapse of time, and is one thing if the loss happens today, and another tomorrow, which is a solecism. This however is not the greatest objection to it. The marine interest is nothing more than a compensation for the loan and the risk; it is the same as common interest, except as to its amount, which is left by law to the regulation of the parties. If the plaintiff may make this interest a part of the value, there is nothing in a common case of insurance to prevent his charging the underwriters with the interest he pays *for*

his shipment, or with the interest he loses by its being a dead capital while on board. This is at least a new doctrine; but its novelty is not the worst part of it; its effect, upon the present case, is to involve both parties in great absurdity. It converts this contract into a wager policy; for if the interest is insured, it is clearly a wager. 1 *Marsh.* 94. Now there can be no partial loss upon a wager. If the lender had caused himself to be insured, he could not have recovered a partial loss upon more than the money lent; the interest not being insurable at all, if wager policies are void in this state, and not being insurable against partial loss, even if such policies are valid. Such an indemnity is contrary to the nature of a wager; and yet it is the plaintiff's argument that the contract provides for it, contrary to law, and against the spirit of the contract itself.

1808.

GIBSON
*v.*
Philadel.
Ins. Co.

It is said that the rule for calculating general and particular average upon respondentia must be the same. There is great reason in this position; but it is against the plaintiff. His argument is that the instant a partial loss occurs, the marine interest is extinguished upon so much of the loan, from the very commencement of the contract, though the loss may have happened twelve months after it. What do the French writers say upon this subject? Whatever may be the law of *England*, which seems unsettled, the French law expressly subjects bottomry contracts to the payment of gross average. *Ord. de la Marine* 1681. *Art.* 16. *Valin*, in his commentary upon this article, says that contribution shall not diminish the marine interest. " La contribution au rachat ne s'impute pas, *ipso jure*, sur le " capital donné à la grosse, *à l'effet de diminuer le profit mari-* " *time;* l'imputation ne se fait *que du jour que le donneur a été* " *mis en demeure de contribuer.*" That is, the marine interest runs on until the lender becomes liable to make the payment, which in the present case was upon the return of the *Triton;* and the contribution is then made only in proportion to the capital loaned. To the same point are *Pothier, Trait. du Prêt a la Grosse* 209. and 2 *Emerig.* 509. The case of *Pons* against *David* & *Isnard*, decided in the admiralty of *Marseilles* in 1750, and reported in 2 *Emerigon* 410. is completely in point to the present case. The defendants there claimed that the lender should contribute to gross average, the same proportion of the loan and its interest, which his part of the average bore to the capital loaned; but the court refused, and settled the average upon the capital only.

The second exception is equally untenable. Usage is out of the case; there has not been the least evidence of it. The question therefore is a naked one: whether an underwriter on goods is answerable for any freight which the owner has paid during the voyage; *or*, in other words, whether freight paid in advance, or *pro rata*, is part of the cost and charges of the goods. There is no case to be found that countenances such a doctrine; no settlement of an average in which it has ever been included. The charges allowed are those which are incurred to put the goods on board; freight is incurred afterwards, and in the event of a total loss is not due at all. The claim is therefore to make the underwriters pay on a partial loss, what they could not be charged with at all if the loss were total. In the adjustment set out in 1 *Magens* 256, the freight was not allowed; it was merely used in the calculation to ascertain the net proceeds of the damaged goods, and so it always is. As to short property, in addition to its not having been made a point before the referees, a mere statement of the demand puts an end to the difficulty. The lender, in the first place, has run the risk of losing the whole principal and interest, which entitles him to the whole. But in the next place, what does the property on board fall short of? The sum insured? What is insured? Nothing but a partial loss on the proceeds of the loan. The proceeds of the loan were on board, the risk has been run, and the loss has happened. The borrower has therefore the benefit of his whole insurance, and the lender is entitled to the benefit of his whole premium.

The cause being argued upon the last day of *March* term, it was held under advisement until this day, when

TILGHMAN C. J. delivered the opinion of the court.

In this case exceptions have been filed to the award of referees.

The plaintiff borrowed of the defendants thirty thousand dollars on respondentia, on specie, goods, wares, and merchandises, laden on board the ship *Triton*, bound on a voyage from *Newcastle* in the river *Delaware* to *Canton* in *China*, and from thence to *Philadelphia*. The bond, which is drawn in the usual form except a memorandum at the end of it, obliges the plaintiff, in case the voyage is performed, to pay the defendants the sum of thirty thousand dollars, and also the sum of five hun-

dred and eighty three dollars fifteen cents per month, for the whole time that the voyage should continue. The memorandum on which the dispute has arisen, is as follows—" It being " first declared to be the mutual understanding and agreement " of the parties to this contract, that the lenders shall be liable " to average, and entitled to the benefit of salvage, in the same " manner to all intents and purposes, as underwriters on a poli- " cy of insurance according to the usages and practices of the " city of *Philadelphia*."

The ship arrived in safety at *Canton*, where she took in a cargo for *Philadelphia;* and on her homeward voyage the goods of the plaintiff were damaged to the amount of about one-fifth of their value. On the settlement of this loss, a difference arose between the plaintiff and the defendants, which was submitted to arbitrators. There was no dispute as to the fact of loss, but the question was on what *amount* the average should be calculated. The plaintiff first contended before the referees, that in consequence of some communications between him and the defendants prior to the execution of the bond, the average should be computed on the amount of the loan and interest. The referees were of opinion that there was no proof of any communication which could have that effect, or any other effect altering the contract expressed in the bond. The plaintiff next contended that the insurance must be considered as having been made on a *valued* policy, to the amount of thirty-eight thousand seven hundred and forty-seven dollars twenty-five cents, and that he was entitled to have the average of twenty per cent. calculated on that sum; and he contended in the last place, that even supposing the average to be calculated on an open policy, he was entitled to include a sum of money paid at *Canton* on account of freight, as part of the cost and charges of the goods. On both these points the referees decided against him. Their opinion was that the average should be computed on the prime cost and charges of the goods and premium of insurance, excluding the freight.

This contract, partaking of the nature both of respondentia and insurance, appears to have been lately introduced into this city. It is to be regretted that it had not been expressed in such precise terms, as to leave no room for that great difference of opinion which the parties entertain concerning it. The court must decide upon the matter as it appears on the face of the

1808.

GIBSON
v.
Philadel.
Ins. Co.

bond; for the referees determined that there was no proof of any extraneous facts to alter the bond, and nothing has been shewn to us which could induce us to say that they were wrong in that determination. Then what says the bond? That the lender shall be liable to average in the same manner to all intents and purposes as underwriters on a policy of insurance, according to the usages and practices of the city of *Philadelphia*. What is the law, usage, and practice, in case of a loss of this kind? The plaintiff has laid before us the calculation of a loss on a *valued* policy by a very intelligent broker, Mr. *Clement Biddle;* but there is no occasion to examine the correctness of it, because there is nothing in the bond which authorizes us to consider this as a *valued* policy. All policies are considered as open unless the contrary is expressed. Then taking it as an open policy, the average is to be calculated on the cost and charges of the goods and the premium of insurance. There is no ground for taking into consideration the marine interest which the plaintiffs paid for the loan; as well might the assured, in common cases of insurance, charge the underwriters with usurious interest paid by him for the money with which he purchased the goods. This interest is not the cost of the *goods*, but the cost of the *money* with which the insurer has nothing to do.

The case then is narrowed to this point, whether the plaintiff had a right to include the *freight*, as part of the cost and charges of the cargo. Freight in its nature seems distinct from those costs and charges. It is the price paid for carriage of the goods; and in case of a total loss, it is not payable at all. This is not a new point. It received an express decision in *Baillie* v. *Moudigliani*, *(Parke 53. 25 Geo. 3.)* where it was the unanimous opinion of the court, that in an insurance on goods the underwriters are not liable for freight paid by the owner of the goods, because they have not engaged to indemnify the insured against it. That case is not an authority here; but it is entitled to that consideration which we pay to the respectable courts of all nations, when they found their decisions not on municipal regulations, but on the general principles of maritime law. It appears to me therefore that the referees were right in excluding the freight.

My opinion on the whole is that the exceptions are not good, and that the award be confirmed.

SMITH J. My opinion is that the report be confirmed, because I cannot discover in it any clear mistake either in fact or in law.

Award confirmed.