The.opinion of the Court was delivered by
Tilghman Q. J.
By the condition of the bond, the defendants were to be discharged from their obligation, “ if, during the voyage, and before the return of the said property to Philadelphia,.an utter loss of the said ship, by fire, enemies, men of war, or any other casualty, unavoidably shall happen, and the said Duval and Curcier shall and do, within three calendar months after such utter loss, well and truly account for, upon oáth, and pay unto The Insurance Company of the State of Pennsylvania, their successors or assigns, a just and proportional average, on all the said spe *147 eie, goods, wares and merchandises of the said Duval and Currier, so carried from Philadelphia an board the said ship, and the nett proceeds thereof, and on all other goods, specie, tvares and merchandises, which the said parties shall therefrom acquire during the said voyage, and shall ship on board the said vessel, and which shall not be unavoidably lost as aforesaid. It being first declared to be the mutual understanding and agreement of the parties to this contract, that the lenders shall not be liable for any charge, damage, or loss, that may arise from seizure or detention of the within mentioned property, in consequence of illicit of prohibited trade. But the said lenders shall be liable to average, and entitled to all the benefits of salvage, in the same manner, to all intents and purposes, as underwriters, as though this instrument was a policy of insurance, executed by the said Insu-. ranee Company of the State of Pennsylvania.
This is the usual form of respondentia bonds in Philadelphia, and is peculiar to this city. It resembles the French contract.of respondentia much more than the English, but is not like the French, or any other which is known to me. In fact, contracts of this kind, are so different, in different'countries, (although they resemble each other in some prominent features,) that when disputes arise, they are to be decided by the words of the particular contract in question, rather than by any principles of general commercial law. In the present instance, therefore, we must endeavour to ascertain the meaning of the bond, and be governed by it. According to the construction given to it, by the defendants’ counsel, the risk which the plaintiffs took upon themselves, relates to. the ship, and not to the goods; so that if the ship returned to Philadelphia, the defendants, would be liable for the whole principal and interest, though the goods were all lost. This indeed would be very- hard, and very extraordinary, considering that the loan was made upon the goods, and that the goods are the source from which the defendants were to derive the means of payment; and when we add to this, that by the express understanding of the parties, the plaintiffs are liable, to average, and have the benefit of salvage, in the same manner, to all intents and purposes as underwriters, as if this instrument zvas a policy of insurance, it will plainly appear, that the defendants’ construction is so con *148 trary to the main intent of the agreement, as not to be main* The defendants say, indeed, that the average to which the plaintiffs are liable, is only general average, bat I see no reason for taking it in that restricted sense. Ave-both general and particular, must have been intended ; for how can the instrument be considered to all intents and purposes as a policy of insurance, if the lenders are not to be subject to particular average ? Indeed I take this construction to have been settled in the case of Gibson v. The Philadelphia Insurance Company, 1 Binn. 405. I here, both Court and counsel, took for granted, that the lender was liable to particular average, arising on damage sustained by goods on the homeward voyage; and the only question was, as to the sum, on which the average was to be calculated. It is true, that the point now brought up, was not then presented to the Court. But why ? Because it never entered into the heads of the counsel that it was tenable. That cause came into Court on an exception to the report of referees. The referees were, I believe, the late Mt. EdwardTilghman and Mr. Rawle; and when the legal character of those gentlemen, as well as of the counsel who argued the exceptions, is considered, it is hardly supposable, that they should all have fallen into so gross an error as is imagined by the counsel for the defendants. Let us consider now, whether the condition of this bond has been performed ? The defendants say it has, because the ship was utterly lost, and the goods which were saved, came to the hands of the plaintiffs, who sold them, and have received the proceeds. But I cannot think that the ship was lost within the meaning of the contract. Utterly lost are strong expressions, intended, as I conceive, to be distinguished from technically lost. A ship is not utterly last, while she remains in specie, in the hands of the owners. Had she been taken by an enemy, she would have been utterly lost to the owner. So, had she been burnt, or wrecked and gone to pieces. But she is not utterly lost, merely because it may cost’ more than she is worth to repair her. These words, in a bottomry bond, received a contruction in the case of Thomson v. The Royal Exchange Assurance Company, 1 Maule & Selw. 30. It was there decided, that nothing but an actual total loss, will discharge the borrower .of money upon bottomry, and the distinction was taken be *149 tween the contract of bottomry and of insurance. In the latter, the assured may abandon for a total loss when the ship is m such a condition, that her repairs will cost more than she is worth ; but in the former, nothing short of a total destruction of the ship will constitute an utter loss. If she exists in specie, in the hands of the owner, it will prevent an utter loss. Then it appears, that if the defendants stand upon the words of the bond, the case is against them. And it is equally against them, if they forsake the letter, and resort to the spirit, of the contract. It must have been intended, that the borrower should pay the debt, when he received all his goods undamaged, otherwise the lender would be involved in the risk of the market, which could not have been intended. The defendants’ argument, does in fact reduce the contract, under the existing circumstances, to a simple wager upon the market, than which nothing can be more foreign from the whole scope of the writing. The most liberal construction, and in general the most favourable to the borrower, would be to consider it as a contract of insurance ; for then, he will be indemnified for those partial losses which so frequently occur. Now considering this as an insurance on the goods, the assured could not recover. It is not essential that the goods should be brought home in the same bottom in which they were shipped. They must not be shifted, without necessity; but where necessity exists they may be sent in another vessel, and while in that vessel, they are at the risk of the insurer. Had the goods, in the present case, suffered damage on the voyage from Martinique to Philadelphia, the plaintiffs would have been answerable. But they received no damage, and therefore the defendants had no right to abandon. In whatever light, then, this case is considered, whether on the letter of the bond, or in the more enlarged view of a policy of insurance, the law and the merits are with the plaintiffs. They are therefore entitled to judgment upon the verdict.
Judgment for the plaintiffs.